**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Preston House,

                    Plaintiff,

          v.

TH Foods, Inc.,

                    Defendant.

Case No. 2:24-cv-01326-JAD-DJA

**Order
and
Order to Show Cause**

This retaliation case arises out of pro se Plaintiff Preston House's employment as an operations manager for Defendant TH Foods, Inc. (ECF No. 18); (ECF No. 64). Plaintiff sues Defendant for damages, alleging violations of federal and Nevada state statutes and seeking $10 million in damages for emotional distress. (ECF No. 18); (ECF No. 74-5 at 3). Despite placing his mental health at issue in this litigation, and despite admonitions from the Court, Plaintiff has obstructed nearly every attempt Defendant has made at conducting discovery to defend against Plaintiff's claims and to contradict his assertion that Defendant alone caused his damages. As part of its attempts to conduct discovery, Defendant now moves for the Court to enter an order setting the parameters of a court-ordered Federal Rule of Civil Procedure 35 examination, arguing that Plaintiff has refused to stipulate to those parameters. (ECF No. 298). Defendant also moves to extend the discovery deadlines, explaining that it has not been able to complete discovery due in part to Plaintiff's failures to cooperate in discovery. (ECF Nos. 301, 317). Finally, Defendant has filed a motion for case terminating sanctions to remedy Plaintiff's obstruction of discovery. (ECF No. 306).

Defendant's arguments in support of case terminating sanctions are well taken. So, the Court grants in part and denies in part Defendant's motion for sanctions. The Court grants the motion insofar as the Court will require Plaintiff to appear and show cause why the undersigned magistrate judge should not recommend sanctions to the assigned district judge. It denies it

insofar as Defendant requests the Court to issue those sanctions without a hearing. Because the Court is considering case terminating sanctions, it further denies Defendant's motions regarding the Rule 35 examination and extending discovery without prejudice as premature pending the Court's decision following the show cause hearing.

## I.    Background.

Plaintiff initiated this case through counsel on July 19, 2024. (ECF No. 1). On January 22, 2025, Plaintiff began litigating this case pro se. Since then, Plaintiff has obstructed Defendant's attempts at discovery and has violated Court orders. Plaintiff has obstructed this case's progression in eight ways: (1) by preventing Defendant from conducting discovery into Plaintiff's medical records; (2) by refusing to produce to Defendant notes that Plaintiff relied on and read from during his deposition; (3) by obstructing Defendant's attempts to take discovery from third parties; (4) by failing to respond to certain of Defendant's interrogatories and requests for production despite a Court order compelling him to do so; (5) by obstructing Defendant's attempts to set a Federal Rule of Civil Procedure 35 examination; (6) by unreasonably objecting to each of Defendant's requests to extend discovery, which requests Plaintiff's own behavior necessitated; (7) by repeatedly filing rogue documents despite warnings from the Court that doing so would result in sanctions; and (8) by relying on hallucinated, misquoted, and miscited cases and continuing to misquote and miscite cases after the Court warned him that doing so would result in sanctions. The Court outlines each of these categories of Plaintiff's obstructions below.

### A.    *Plaintiff's medical records.*

While counseled, Plaintiff served Defendant with his initial disclosures, which disclosures named Plaintiff's medical providers and attached a number of his medical records. (ECF No. 74 at 2); (ECF No. 198-5). After his counsel withdrew, Plaintiff sent Defendant several of his medical records. (ECF No. 74 at 2). Defendant then served its first set of discovery requests on Plaintiff in March of 2025 and also requested that Plaintiff fill out and sign a Health Insurance Portability and Accountability Act ("HIPAA") authorization so that it could obtain medical records directly from the medical providers identified in Plaintiff's initial disclosure and other providers identified during discovery. (*Id.*) (ECF No. 74-1 at 1-2). Plaintiff refused to fill out the

authorization, asserting that he had already provided Defendant with the medical records it sought. (ECF No. 74-4 at 2). So, Defendant moved to compel Plaintiff to fill out the HIPAA release, which motion the Court granted. (ECF No. 103).

Despite the Court's order, Plaintiff still refused to fill out the HIPAA release. (ECF No. 109 at 2). Instead, on July 7th, 2025, Plaintiff sent Defendant an email, purporting to provide a "limited release" of only some of his records. (ECF No. 109-2). The next day, Plaintiff moved for a protective order seeking to prevent Defendant from serving subpoenas on Plaintiff's medical providers and former employers. (ECF No. 104). When Defendant again asked Plaintiff to fill out a HIPAA release on July 8, 2025, Plaintiff refused, asserting that he would await the Court's ruling on his motion for protective order. (ECF No. 109-4). The Court denied Plaintiff's motion for protective order without prejudice due to Plaintiff's failure to meet and confer. (ECF No. 106). On July 11, 2025, Plaintiff filed a renewed motion for protective order (ECF No. 111) and Defendant again moved to compel Plaintiff to fill out a HIPAA release (ECF No. 109). The Court denied Plaintiff's motion and granted Defendant's motion at a hearing held on August 14, 2025, and Plaintiff executed the HIPAA release at that hearing. (ECF No. 184 at 17-18)

However, when executing the release, Plaintiff did not fill out the expiration date. (ECF No. 227). Defendant therefore followed up with an email asking Plaintiff to fill that portion out. (ECF No. 227-4 at 3-4). Plaintiff refused. (*Id.*). So, Defendant asked Plaintiff to meet and confer on the issue, but Plaintiff refused again. (*Id.* at 2-3). Defendant therefore moved a third time to compel Plaintiff to fill out the HIPAA release on October 16, 2025. (ECF No. 227). The Court heard that motion on November 17, 2025, granted it, and noted that the Court had "already required [P]laintiff to complete this release, and [P]laintiff's ongoing refusal to complete the release violates [the] order at ECF 103." (ECF No. 296 at 14).

**B.      *Notes Plaintiff relied upon during his deposition.***

On May 13, 2025, Defendant took Plaintiff's deposition. (ECF No. 81 at 1). During that deposition, Plaintiff brought with him a set of notes, which notes he referred to and read from during his deposition. (ECF No. 81-1). When Defendant asked that Plaintiff produce his notes to it, Plaintiff refused. (ECF No. 81 at 2). So, Defendant moved to compel Plaintiff to produce his

notes.  (*Id.*).  The Court initially denied this motion for Defendant's failure to include a declaration regarding the parties' meet and confer.  (ECF No. 103).  Defendant then renewed its motion (ECF No. 105) and Plaintiff moved for a protective order preventing him from having to turn over the notes (ECF No. 111).  The Court heard the matter on August 14, 2025, and granted Defendant's motion to compel and denied Plaintiff's motion for protective order.  (ECF No. 178).  Despite the Court's order, just four days later, Plaintiff filed a motion "to clarify and preclude use of deposition preparation notes."  (ECF No. 180).  The Court denied Plaintiff's motion, finding that Plaintiff really sought reconsideration of the Court's order, without briefing the appropriate standard.  (ECF No. 190).

### C.    *Defendant's third party discovery.*

Between September 17, 2025, and November 4, 2025, Plaintiff filed seven motions seeking a protective order over, or alternatively to quash, deposition subpoenas and record requests that Defendant made to third parties.  (ECF Nos. 187, 188, 208, 212, 239, 243, and 281).  Those third parties included witnesses that Plaintiff *himself* listed as individuals and medical providers who could testify about Plaintiff's emotional distress, Plaintiff's medical providers who treated Plaintiff during the hospitalization he attributed to Defendant, and Plaintiff's past employer.  Plaintiff also moved to "strike Defendant's retaliatory discovery and for a protective order," asking the Court to strike Defendant's motions and to prevent Defendant from conducting discovery for any of its defenses.  (ECF No. 233).  Two of Plaintiff's motions for protective order sought to prevent the depositions of Johanna Gastelum—the mother of Plaintiff's son[1]—and Zhibek Alkanova—Plaintiff's former fiancé.[2]  (ECF Nos. 187, 188).  The Court denied each of

---

[1] During his deposition, Plaintiff described interpersonal strains he's had with his son and Gastelum.  (ECF No. 199-4) (sealed transcript).  So, Defendant sought to depose Gastelum to learn about Plaintiff's emotional state and potential alternative causes for Plaintiff's claimed damages.  (ECF No. 198 at 4).

[2] Plaintiff *himself* listed Alkanova as a witness who would testify "as to how Plaintiff's daily life has been affected and continues to be affected due to the harassment, discrimination, and retaliation Plaintiff experienced during his employment by Defendant."  (ECF No. 198 at 5); (ECF No. 198-5 at 3).

Plaintiff's motions at its November 17, 2025, hearing, noting that Plaintiff's arguments in support of his motions were conclusory. (ECF No. 285); (ECF No. 296 at 11-13).

In its motion for case ending sanctions, Defendant outlines ways in which Plaintiff has continued to obstruct Defendant's attempts to depose Gastelum and Alkanova even after the Court's hearing. (ECF No. 306). On December 11, 2025, Defendant served Gastelum with a deposition subpoena. (ECF No. 306 at 6). Gastelum called counsel for Defendant that same day and indicated that she was available for the deposition on the scheduled date of January 9, 2026. (ECF No. 306-1). Later that day, Plaintiff emailed Defendant, stating that "[a]ny attempt to contact or interview my son's mother is inappropriate and outside the scope of permissible discovery." (ECF No. 306-2). Despite Gastelum indicating her ability to attend the January 9, 2026, deposition, Gastelum did not attend the deposition, instead later texting Defendant's counsel that her work schedule made it so that she could not attend. (ECF No. 306-8). And although Plaintiff was aware of the deposition and Defendant's counsel sent a courtesy email to remind him, Plaintiff did not attend the deposition. (ECF No. 306 at 13). Gastelum then failed to respond to Defendant's attempts to reschedule the deposition. (Id.). Defendant asserts its belief that Gastelum's sudden noncompliance and Plaintiff's non-attendance suggests that Plaintiff communicated with Gastelum and knew she would not attend the deposition. (Id.).

Defendant served its deposition subpoena on Alkanova on November 30, 2025. (ECF No. 306-1); (ECF No. 306-11). On the day before the deposition, Defendant's counsel sent Plaintiff a reminder of the deposition and Plaintiff acknowledged receipt. (ECF No. 306-12). But neither Plaintiff nor Alkanova appeared for the deposition. (ECF No. 306 at 14). Defendant asserts that it is unusual that Plaintiff did not attend the deposition and suggests that Plaintiff knew it would not move forward. Plaintiff's does not address Defendant's arguments in response. (ECF No. 307).

### D.    Defendant's interrogatories and requests for production.

On October 8, 2025, Defendant moved to compel Plaintiff to respond to certain of its interrogatories and requests for production. (ECF No. 209). The Court granted that motion and ordered Plaintiff to respond to the requests on or before December 17, 2025. (ECF No. 285);

(ECF No. 296 at 14).  In its motion for case ending sanctions, Defendant asserts that Plaintiff failed to provide responses to the discovery requests and only provided updated responses to three of the interrogatories in emails.[3]  (ECF No. 306 at 7-10); (ECF No. 306-4); (ECF No. 306-5). Notably, the discovery requests Plaintiff refused to answer were related to his medical care,

---

[3] These interrogatories, and Plaintiff's emailed responses, are as follows:

Interrogatory 14:  Identify every doctor, physician, psychologist, psychiatrist, counselor, therapist, social worker, health or medical practitioner, hospital, clinic, institution, or other health care provider that you have consulted, been examined by, or been treated by during the period of January 1, 2002 through the present, including medical or mental health providers from your time in the U.S. military and, for each psychological or psychiatric exam you have undergone since January 1, 2002 list the date, place, examiner, purpose of each exam and result of the exam if you know.

Response:  Plaintiff incorporates by reference the complete VA medical records, hospitalization records, and treatment notes that Defendant already possesses pursuant to the August 14, 2025 HIPAA authorization. Those records contain all responsive information, including dates of examinations, treating providers, locations, the purpose of each examination, and any documented findings. Plaintiff does not have additional responsive documents in his possession, custody, or control beyond what has already been produced by the VA through Defendant's subpoenas and the August 14, 2025 HIPAA release. To the extent the interrogatory seeks medical interpretation or expert opinions, Plaintiff is not a medical professional and cannot provide medical conclusions. No further responsive information exists beyond what is contained within the VA records already in Defendant's possession.

Interrogatory 18: Identify the full names of and current addresses for any child you fathered or who has lived with you at any time, including but not limited to Pharrell House, together with the date and place of birth for the child, name of mother and current address if known, gender of the child, whether the child is living, any dates the child lived with you, and for any custody matter involving any child, provide the case name, case number, court name and court location.

Response: Plaintiff incorporates by reference the VA medical records and deposition testimony that Defendant already possesses pursuant to the August 14, 2025 HIPAA authorization. Plaintiff has no additional responsive documents in his possession, custody, or control. No further information exists beyond what has previously been disclosed

Interrogatory 19: Provide the address for your fiancé whom you have identified as Zhibek Alkanova.

Response:  Plaintiff is no longer in a relationship with Ms. Alkanova and no longer resides with her. Plaintiff does not possess her current address and has no responsive information beyond what was previously disclosed in initial disclosures. To Plaintiff's knowledge, no additional responsive information exists.

(ECF No. 209); (ECF No. 306 at 7-10); (ECF No. 306-4); (ECF No. 306-5).

mental health treatment, and possible alternative sources for Plaintiff's emotional distress such as his time in the Navy. [4]

### E.    Rule 35 examination.

On October 15, 2025, Defendant asked Plaintiff if he would agree to submit to a Federal Rule of Civil Procedure 35 examination.  (ECF No. 230-1).  Plaintiff refused, and also refused Defendant's follow up request to meet and confer about the issue.  (*Id.*) (ECF No. 230-2).  So, on October 17, 2025, Defendant moved to compel Plaintiff to undergo a Rule 35 examination.  (ECF No. 230).  The Court granted that motion at its November 17, 2025, hearing, further ordering the parties to meet and confer and submit a stipulated proposed order specifying the time, place, manner, conditions, and scope of the examination as well as the person or persons who will perform it as required by Rule 35.  (ECF No. 285); (ECF No. 296 at 15).

On December 19, 2025, Defendant again moved for the Court to enter an order regarding the Rule 35 examination.  (ECF No. 298).  That motion is currently pending before the Court. Defendant argues that, following the Court's hearing, it asked Plaintiff to meet and confer regarding the examination.  (*Id.* at 2).  But Plaintiff would not agree to holding a meet and confer until his objection to the Court's November 17, 2025, hearing order was ruled upon.  (*Id.* at 3). After Plaintiff's objection was overruled, the parties discussed the terms of the examination, but

---

[4] These requests included the following:

Request for Production 2: All Documents and Communications from your time serving in the U.S. military, including in the Army, Marine Corps, Navy, Air Force, Space Force or Coast Guard, from January 1, 2002 to the present, including but not limited to, employment records, medical records, disciplinary records, and discharge records. Please review and sign the "HIPAA Authorization for Release of Medical, Psychiatric and Psychological Records" attached to these Requests as Exhibit A as soon as possible.

Request for Production 3: All Documents and Communications concerning any medical care, counseling, psychiatric treatment, psychological or psychiatric examination or other therapy sought or received by you from a doctor, physician, psychologist, psychiatrist, counselor, therapist, social worker, health or medical practitioner, hospital, clinic, institution, or other health care provider from January 1, 2002 to the present. Please review and sign the "HIPAA Authorization for Release of Medical, Psychiatric and Psychological Records" attached to these Requests as Exhibit A as soon as possible.

(ECF No. 209).

Plaintiff disagreed with the date of the examination without explaining why he was not available, sought to limit the examination to four hours, and sought to limit the scope of the examination only to the emotional distress he claimed Defendant caused to the exclusion of any other sources of that distress.  (ECF No. 298-4); (ECF No. 298-5).  In response, Plaintiff stands by his position regarding the scope of the examination and asks that the Court enter "only a narrow, proportional Rule 35 order tethered to the condition in controversy."  (ECF No. 302).  In reply, Defendant argues that Plaintiff has not provided a legitimate basis to narrow the Rule 35 examination only to the emotional distress Plaintiff claims Defendant caused.  (ECF No. 305).

### F.      Defendant's discovery extension requests.

Plaintiff's obstruction of Defendant's attempts at discovery has caused Defendant to seek to extend the discovery deadlines.  But Plaintiff opposed each of Defendant's first three motions to extend discovery, accusing Defendant of causing the delay.  *See* (ECF No. 51) (opposing Defendant's first motion to extend time and stating that "the request appears to be an unnecessary delay tactic"); (ECF No. 72) (opposing Defendant's second motion to extend time and stating that "Defendant's claim that it 'cannot retrieve records via subpoena' due to lack of a HIPAA authorization is irrelevant where documents have been provided voluntarily…The burden of delay rests with Defendant."); (ECF No. 234) (opposing Defendant's third motion to extend time and stating that "Defendant's serial failure to pursue discovery in a timely manner bars retroactive extensions").  Unpersuaded by Plaintiff's objections, the Court has granted Defendant's first three motions to extend time.  (ECF Nos. 68, 103, 285).  Defendant has now moved a fourth time to extend discovery deadlines (ECF No. 301), and moved again to amend the now-passed deadlines it sought in its fourth request (ECF No. 317).  Defendant explains that part of the reason it has been unable to complete discovery is because it has been unable to schedule Plaintif's Rule 35 examination and conduct expert discovery related to that examination.  (ECF No. 301).  Plaintiff opposes both motions, arguing in his first opposition that Defendant has "strategic[ally] delay[ed] in pursuing Rule 35 relief," and that Defendant has repeatedly attempted to "shift the consequences of Defendant's litigation choices onto Plaintiff."  (ECF No. 303).  Plaintiff also argues that allowing Defendant to reopen discovery would allow it "to attempt post-hoc

reconstruction of a record it failed to build during discovery." (*Id.*).  In opposing the second motion, Plaintiff asserts that "the inability to complete discovery arises from Defendant's own timing decisions." (ECF No. 318).  Defendant replies that Plaintiff has actively interfered with discovery, forcing Defendant to seek to extend discovery deadlines.  (ECF Nos. 304, 321).

### G.    *Rogue filings.*

Since appearing pro se, Plaintiff has also ceaselessly filed unauthorized surreplies, notices, and supplements.  Plaintiff was cautioned on March 25, 2025, that

> Local Rule 7-2 allows a party opposing a motion to make just one filing—his response—and makes it clear that "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause. The judge may strike supplemental filings made without leave of court….House is cautioned that supplemental filings are not permitted without leave of court.

(ECF No. 64 at 9-10) (citing Local Rule 7-2(g)).

Undeterred, Plaintiff filed a "supplemental motion to seal" without leave of Court on June 30, 2025.  (ECF No. 96).[5]  He then filed a "supplemental memorandum of legal authority in support of Plaintiff's motion for summary judgment" on July 31, 2025.  (ECF No. 161).

On August 1, 2025, the Court granted Defendant's motion to strike and struck various of Plaintiff's surreplies and a notice, explaining that Plaintiff had failed to seek leave of Court before filing the documents, reminding Plaintiff of the prior admonition, and pointing Plaintiff to the Local Rule prohibiting such filings without leave of Court.  (ECF No. 162) (citing LR 7-1(b)).

---

[5] Following this admonition, Plaintiff also filed various other rogue filings without leave of Court. (ECF No. 96) ("statement of undisputed material facts"); (ECF No. 100) (surreply); (ECF No. 114) ("memorandum regarding preservation of § 1981 retaliation theory for jury instructions and trial"); (ECF No. 124) (surreply filed as a "notice of duplicative copies"); (ECF No. 130) ("notice of preservation of position"); (ECF No. 133) ("notice of preservation of position"); (ECF No. 135) ("notice regarding unequal processing of filings"); (ECF No. 137) ("notice of missing filing and request for docket clarification"); (ECF No. 160) ("notice of full compliance with Rule 56 and Klingele/Rand requirements").  However, the Court does not construe these filings as defying a Court admonition because they are technically not "supplements" but another form of filing. Giving pro se Plaintiff the benefit of the doubt, it is not clear he would have known that the Court's initial admonition applied to any other filings than supplements.

Despite this warning, Plaintiff filed a "notice of expiration of final settlement demand" on August 4, 2025 (ECF No. 165); a "notice of no redactions" on September 9, 2025 (ECF No. 185); a supplement, "notice of preservation of objection and rights," and "notice of filing exhibit F" all on September 25, 2025 (ECF Nos. 192, 193, 194); and a surreply on October 2, 2025 (ECF No. 206). The Court again granted Defendant's motion to strike certain of Plaintiff's rogue filings on October 3, 2025, and cautioned Plaintiff "that if he continues to file supplements without leave of Court, the Court may impose appropriate sanctions." (ECF No. 203).

Still undeterred, Plaintiff filed two supplements (ECF Nos. 218, 219) and a "notice of defense HIPAA overreach" (ECF No. 221) on October 14, 2025. On October 15, 2025, Plaintiff filed a "statement of completion of discovery" (ECF No. 225) and what appeared to be a motion filed as a "response," which sought the same relief Plaintiff had already sought in prior motions (ECF No. 226). On October 16, 2025, Plaintiff filed a surreply (ECF No. 229). On October 17, 2025, Plaintiff filed a "declaration," which sought a court order (ECF No. 236). On October 22, 2025, Plaintiff filed two surreplies (ECF Nos. 244, 246) and a "notice of judicial inconsistency," (ECF No. 247). On October 24, 2025, the Court struck two of Plaintiff's surreplies (ECF Nos. 244, 246) and informed Plaintiff that "[a]ny further filing of sur-replies without leave of Court will result in the imposition or recommendation of sanctions." (ECF No. 258).

In an apparent attempt to continue filing frivolous documents without violating the Court's admonitions regarding supplements and surreplies, Plaintiff began filing his documents almost exclusively as "notices." Plaintiff filed two "notice[s] of clarification" on October 27, 2025, and October 29, 2025. (ECF Nos. 261, 264). He also filed a "notice of improper use of character evidence (ECF No. 268), a duplicate reply (ECF No. 269), a "notice of clarification of 258 order" (ECF No. 270), and another "notice of improper use of character evidence" (ECF No. 272) all on October 29, 2025. On October 31, 2025, Plaintiff filed a "prehearing brief," (ECF No. 277) which brief the Court did not request and a "notice of compliance and record preservation" (ECF No. 278). The Court struck ECF Nos. 192, 194, 206, 221, 225, 226, 229, 236, 247, 261, 264, 268, 269, 270, 272, 277, and 278 at its November 17, 2025, hearing and ordered that Plaintiff "may not reiterate arguments [he] ha[s] already made in motions, responses, and replies

by filing supplements, sur-replies, notices, or any other filings without leave of court."  (ECF No. 285); (ECF No. 296 at 20).  The Court added that "[i]f you violate this order, Mr. House, I will strike that filing and hold a sanction hearing."  (ECF No. 296 at 20).  Despite this order, on March 23, 2026, Plaintiff filed yet another surreply (ECF No. 319), which surreply the Court struck (ECF No. 320).

### *H.      Use of artificial intelligence.*

During its November 17, 2025, hearing the Court noted that Plaintiff appeared to be relying on artificial intelligence to draft his filings.  (ECF No. 285); (ECF No. 296 at 21-23).  The Court noted that Plaintiff had cited at least two cases that appeared to be hallucinated.  (ECF No. 296 at 21-22).[6]  It also found that Plaintiff had, at times, attributed certain quotes to cases, which cases do not contain those quotes.[7]  (ECF No. 296 at 22).  It further found that Plaintiff cited to cases for certain propositions that the cases did not appear to support.[8]  (ECF No. 296 at 22-23).

The Court therefore ordered that

> going forward [Plaintiff] may not cite hallucinated cases or attribute quotations to cases that do not contain them…any violation of this order will…result in the…court holding a sanctions hearing under Local Rule IA 11-8(e).  And again, like the last discovery violations, Mr. House, I'm going to give you this one pass.  But if I find that we continually have to look into these to see if they're correct and they're not correct, I am going to order sanctions.

(ECF No. 296 at 23-24).

---

[6] (ECF Nos. 233, 235) (citing the apparently hallucinated case *Scherer v. UTI Worldwide, Inc.*, 2017 WL 2806896 (D. Nev. 2017)) and (ECF Nos. 239, 243) (citing the apparently hallucinated case *EEOC v. Kaiser Found. Hosp.*, 2006 WL 3293362 (N.D. Cal. 2006)).

[7] (ECF No. 212) (citing *EEOC v. Princeton Healthcare Sys.*, No. 10-4126, 2012 WL 1623870 (D. N.J. May 9, 2012) and *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)); (ECF No. 220) (citing *Michelson v. U.S.*, 335 U.S. 469, 476 (1948)); (ECF No. 234) (citing *Pinter-Brown v. Regents of Univ. of California*, 261 Cal. Rptr. 3d 486 (2020)).

[8] For example, in ECF No. 220 Plaintiff cited *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166 (D. Nev. 1996) for the proposition that "sanctions are proper where discovery conduct obstructs resolution of issues."  But the Court in *Shuffle Master* declined to issue sanctions related to a discovery motion because the parties did not meet and confer in advance.

In Defendant's motion for case terminating sanctions, Defendant asserts that Plaintiff has continued to rely on misattributed quotes and improperly attributed propositions in his filings since the Court's November 17, 2025, order.  (ECF No. 306 at 11).  Defendant references Plaintiff's response to Defendant's motion to extend discovery (ECF No. 303) and his response to Defendant's motion for a Rule 35 examination (ECF No. 302), pointing out that they contain faulty citations.  (ECF No. 306 at 11).

Indeed, in Plaintiff's response to Defendant's motion to extend discovery, he relies on *Henry v. Gill Inds., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993) for the quotation that "Rule 35 does not exist to provide a party with a second chance to develop expert testimony after deadlines have passed."  (ECF No. 303 at 3).  But *Henry* does not contain this quote or reference Rule 35 at all.  Plaintiff also cites *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) for the quotation "[t]hat a party encounters difficulty in scheduling discovery does not, by itself, establish good cause where the party waited too long to act."  (ECF No. 303 at 3).  *Zivkovic* does not contain this quotation.  Plaintiff cites *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) for the quotation that "[a]t some point, litigation must come to an end."  (ECF No. 303 at 4).  *Cornwell* does not contain this quotation.

Plaintiff also misattributes quotes in his response to Defendant's motion for a Rule 35 examination order.  (ECF No. 302).  He cites *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) for the quotation that "[d]iscovery into wholly unrelated personal matters is improper and subject to limitation."  (ECF No. 302 at 3).  *Rivera* does not contain this quotation.  Plaintiff cites *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) for the quotation that "[t]he fact that an expert wishes to conduct certain tests does not mean the tests are permissible Rule 35 [sic]" and that "[s]peculation or generalized assertions do not satisfy Rule 35."  (ECF No. 302 at 3).  These quotes do not appear in the *Schlagenhauf* decision.  Plaintiff cites *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) for the quotation that "[d]istrict courts have broad authority to limit discovery to prevent abuse."  (ECF No. 302 at 4).  That quote does not appear in *Hallett*.  Plaintiff also misattributes a proposition to a case that does not contain it in his response to Defendant's motion for case terminating sanctions.  (ECF No. 307).  He cites *Gattegno v.*

*Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 72 (D. Conn. 2001) for the proposition that "[a]bsent an order, there can be no Rule 37(b) violation." (ECF No. 307 at 4). But that case does not stand for that proposition or even discuss sanctions under Rule 37(b).[9]

## II.    Discussion.

District courts have the inherent power to control their dockets and "[i]n the exercise of that power, they may impose sanctions including, where appropriate ... dismissal" of a case. *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). Federal Rule of Civil Procedure 37(b) also provides for sanctions, including dismissal, where a party fails to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A). A court may dismiss an action based on a party's failure to obey a court order or comply with local rules. *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules). In determining whether to dismiss an action on this ground, the court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)).

Defendant asks that the Court do the following: (1) dismiss Plaintiff's action; (2) find that Plaintiff's emotional distress damages are not attributable to it; (3) prohibit Plaintiff from seeking emotional distress damages or introducing evidence in support of them; (4) striking Plaintiff's

---

[9] Defendant argues that Plaintiff wrongfully cites *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000) for the proposition that "[e]motional distress in retaliation cases may be proven through medical records and contemporaneous documentation without a Rule 35 examination." (ECF No. 309 at 6-7). While *Passantino* does not address Rule 35 as Defendant points out and Plaintiff's brief suggests, it does address the type of evidence that a plaintiff can use to show emotional distress damages, including testimony. So, while the case is not entirely on point for the proposition Plaintiff says it stands for, the Court must liberally construe pro se filings. Using that liberal construction, the undersigned does not find that Plaintiff violated the Court's order by relying on *Passantino* for the proposition he states.

pleadings seeking emotional distress damages, treating Plaintiff's failure to respond to discovery and reliance on hallucinated or misattributed cases as contempt of Court; and (5) to pay Defendant's attorneys' fees incurred in addressing Plaintiff's rogue motions and in bringing the instant motion for sanctions. (ECF No. 306). Plaintiff's response to Defendant's motion provides no convincing basis for the Court to not issue sanctions. (ECF No. 307). Instead, as demonstrated above, the record and docket reflects that Plaintiff has obstructed discovery and disobeyed Court orders.

However, given Plaintiff's pro se status, the Court will give him one chance to explain why his case should not be dismissed and if the case should not be dismissed, what lesser sanctions are appropriate. The Court will therefore require Plaintiff to appear and show cause why the undersigned magistrate judge should not recommend to the assigned district judge to dismiss this case and, if not, why the undersigned should not impose or recommend other sanctions. Because the Court is considering dismissal, it further denies Defendant's motions regarding the Rule 35 examination and extending discovery without prejudice as premature pending the Court's decision following the show cause hearing.

**IT IS THEREFORE ORDERED** that Defendant's motion for case terminating sanctions (ECF No. 306) is **granted in part and denied in part.** It is granted in part insofar as the Court will require Plaintiff to appear and show cause why the undersigned magistrate judge should not recommend sanctions to the assigned district judge and, if not, why the undersigned should not impose or recommend other sanctions. It is denied in part insofar as Defendant requests the Court to issue those sanctions without a hearing.

**IT IS FURTHER ORDERED** that Plaintiff Preston House must appear in person on **August 19, 2026, at 10:00 a.m. in Las Vegas Courtroom 3A** at the Lloyd D. George Federal Courthouse before the undersigned United States Magistrate Judge and show cause why the undersigned should not recommend dismissal of Plaintiff's case for the reasons outlined in this order and, if not, why the undersigned should not recommend or impose other sanctions.

///

**IT IS FURTHER ORDERED** that Defendant's discovery related motions (ECF Nos. 298, 301, 317) are **denied without prejudice as premature** given the Court's intent to hold a show cause hearing that may result in the termination of this case.


DATED: June 18, 2026,

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE