**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Preston House,

Plaintiff

v.

TH Foods, Inc.,

Defendant

Case No.: 2:24-cv-01326-JAD-DJA

**Order Overruling Plaintiff's Objection, Sustaining Defendant's Objection, and Dismissing Case**

[ECF Nos. 324, 325, 326]

This retaliation case stems from plaintiff Preston House's employment with defendant TH Foods, Inc. House was initially represented by counsel, but he began representing himself in January 2025. A year later, TH Foods moved for case-terminating sanctions because of House's discovery conduct.[1] United States Magistrate Judge Daniel J. Albregts ordered House to show cause why he should not be sanctioned for his conduct, explaining in detail the numerous reasonable discovery requests that House refused to answer and the court orders that he violated after being directed to produce discovery.[2] Judge Albregts held a hearing on that show-cause order and now recommends that this case be dismissed without prejudice as a sanction for House's litigation conduct.[3] House objects on 17 different bases to that recommendation. TH Foods objects only to the recommendation that this case should be dismissed without prejudice—it contends that House's conduct warrants dismissal with prejudice.

After a thorough de novo review of the record, the magistrate judge's show-cause order, representations made at the show-cause hearing, and the magistrate judge's recommendation, I

---

[1] ECF No. 306.

[2] ECF No. 322.

[3] ECF No. 324.

find that dismissal with prejudice is the appropriate sanction for House's conduct throughout this litigation. So I overrule House's objections, sustain TH Foods's objection, and adopt the magistrate judge's recommendation in part, dismissing this case with prejudice.

## Background

### A. TH Foods's motion for sanctions

TH Foods filed its motion for case-terminating sanctions in January 2026, the day discovery closed in this case.[4] It argued that House had repeatedly obstructed discovery into his medical records and providers, tried to prevent depositions of witnesses that he identified as having relevant information about his mental health, and refused to sit for a Federal Rule of Civil Procedure (Rule) 35 medical examination even after the magistrate judge compelled his participation.[5] It contended that dismissing House's case was the proper sanction for his conduct, arguing that the court could impose that sanction under its inherent authority, Rule 37, and Local Rule (LR) IA 11-8(e).[6] In House's response, he did not necessarily dispute TH Foods's description of the case's discovery history. He instead insisted that TH Foods failed to identify specific orders that he violated and argued that TH Foods did not show that his discovery conduct was in bad faith or willful disobedience to the court's orders.[7]

### B. Judge Albregts's order to show cause

The magistrate judge first issued an order to show cause, granting the sanctions motion in part but finding that this matter could not be fully resolved without a hearing at which House

---

[4] ECF No. 306; ECF No. 287 (order extending the discovery deadline to January 16, 2026).

[5] ECF No. 306.

[6] *Id.*

[7] ECF No. 307.

would be permitted to show cause why he should not recommend sanctions to the district judge.[8] In that order, the magistrate judge identified eight ways in which House "has obstructed this case's progression":

(1) by preventing TH Foods from conducting discovery into House's medical records;

(2) by refusing to produce notes that House relied on and read from during his deposition;

(3) by obstructing TH Foods's attempts to take discovery from third parties;

(4) by failing to respond to various interrogatories and requests for production despite a court order compelling him to do so;

(5) by obstructing TH Foods's attempts to set a Rule 35 examination;

(6) by unreasonably objecting to each of TH Foods's requests to extend discovery, which House's own behavior necessitated;

(7) by repeatedly filing rogue documents despite warnings from the court that doing so would result in sanctions;

(8) by relying on fake, misquoted, and miscited cases and continuing to misquote and miscite cases after the court warned him that doing so would result in sanctions.[9]

Judge Albregts explained, in detail, how House's conduct resulted in obstruction for each of these categories.[10] He found that House refused to sign a HIPAA authorization form even after the court compelled him to do so and later refused to execute a second authorization with information the provider needed to produce House's records—a discovery saga that required TH Foods to file three separate motions to compel to get a completed form.[11] In response to

---

[8] ECF No. 322.

[9] *Id.* at 2.

[10] *Id.* at 2–13.

[11] *Id.* at 2–3.

another motion to compel, Judge Albregts also ordered House to turn over notes he read from during his deposition, and House didn't comply until Judge Albregts denied his improperly filed motion "to clarify and preclude use of deposition notes."[12] House also sought protective orders to prevent the depositions of seven witnesses that House himself listed as people with knowledge of his emotional distress, all of which Judge Albregts denied. Judge Albregts noted that TH Foods provided evidence that House tried to prevent its lawyers from reaching out to two witnesses (the mother of his son and his fiancé), and acknowledged that the circumstances around their failures to appear for their depositions may have resulted from House's interference.[13] The order also found that House had failed to comply with an order compelling complete answers to interrogatories and requests for production.[14]

Judge Albregts further addressed the parties' ongoing conflict over House's Rule 35 medical examination. In October 2025, TH Foods asked House to sit for the examination; he refused and also refused a request to meet and confer. TH Foods moved to compel the exam, and Judge Albregts granted the motion, finding that House had put his mental health at issue by seeking $10 million in emotional damages and $40 million in punitive damages related to his emotional distress.[15] He ordered the parties to meet and confer about "the time, place, manner,

---

[12] *Id.* at 3–4.

[13] *Id.* at 5.

[14] *Id.* at 5–6.

[15] *Id.* This was not the first time that the magistrate judge explained to House that TH Foods was entitled to fairly broad discovery concerning his mental health. House's unwillingness to provide TH Foods access to that type of information fueled several of the discovery disputes in this case, and his attempts to obstruct discovery into that topic persisted despite the magistrate judge's admonitions. *See, e.g.*, ECF No. 103 at 5–6 (order finding that House put his mental health at issue and requiring him to execute a HIPAA authorization for his medical records); ECF No. 184 at 11:22–17:8 (denying House's motion for a protective order limiting medical-record discovery to a one-year period of time, explaining that the defense is entitled to records from well before House's dispute with TH Foods arose); ECF No. 296 at 15:4–12 (ordering

conditions, and scope of the examination as well as the person or persons who will perform it."[16] A month later, TH Foods filed another motion to compel, explaining that House objected to that order and refused to participate in a meet and confer until that objection was resolved.[17] TH Foods argued that when the objection was resolved in its favor, House sought unreasonable limitations to the scope and time of the exam.[18]

Judge Albregts also noted that House unreasonably objected to TH Foods's requests to extend discovery on at least three occasions, explaining that House's discovery conduct caused the need for the extensions.[19] He found that House had "ceaselessly filed unauthorized surreplies, notices, and supplements" and continued to do so even after being admonished that those filings were not permitted without leave of court.[20] And he found that House repeatedly cited to nonexistent or misquoted cases in his briefs.[21] After concluding that "the record and the docket reflects that [House] ha[d] obstructed discovery and disobeyed Court orders," Judge Albregts acknowledged House's pro se status and set a hearing to give him a "chance to explain why his case should not be dismissed and if the case should not be dismissed, what lesser sanctions [were] appropriate."[22]

---

House to sit for a Rule 35 examination and warning him that the magistrate judge "expect[s] more cooperation than what [he's] seeing at this point").

[16] *Id.* at 7.

[17] *Id.*

[18] *Id.* at 8.

[19] *Id.*

[20] *Id.* at 9.

[21] *Id.* at 11–12.

[22] *Id.* at 14.

**C. The show-cause hearing**

At the show-cause hearing, House argued "that the record viewed as a whole reflect[s] vigorous litigation regarding discovery scope, proportionality, procedure, and legal interpretation—not willful misconduct, bad faith, or conduct warranting terminating sanctions."[23] He characterized the issues Judge Albregts raised in his show-cause order as "isolated disputes" and asked the court to also consider that the defendants still "obtained extensive discovery, retained experts, filed motions, and remain fully capable of defending the merits" of his claims.[24]

House also tried to defend his conduct concerning the Rule 35 examination, claiming that he was only objecting to the scope of the examination, not refusing to participate at all. TH Foods's counsel pointed out that his objections were the same ones he'd raised in response to previous motions to compel and that Judge Albregts had already rejected those objections.[25] Judge Albregts agreed, noting that he had repeatedly explained to House that he put his mental health at issue when he asked for $10 million in emotional-distress damages and that intrusive discovery into his mental health was the price House would have to pay for seeking those damages.[26]

Near the end of the hearing, Judge Albregts opined about the possibility of reopening discovery to cure some of the issues raised in the sanctions motion—particularly, making House sit for a Rule 35 examination. TH Foods's counsel pointed out that several outstanding discovery requests remained unanswered despite court order: they still didn't have the notes from House's deposition and he still refused to provide a full list of his medical providers, so it was

---

[23] ECF No. 328 at 8:20–23.

[24] *Id.* at 9:18–21.

[25] *Id.* at 13:16–14:17.

[26] *Id.* at 14:18–16:21.

unlikely that the Rule 35 examiner would have all the records necessary to prepare for a proper evaluation or write an expert report.[27] Defense counsel also reminded Judge Albregts that House had been given substantial leeway in discovery already and had been repeatedly told how to comply with court orders, but he steadfastly refused to heed those warnings.[28]

**D. Judge Albregts's report and recommendation**

On September 4, 2026, Judge Albregts issued a report recommending that House's case be dismissed.[29] He recounted the eight categories of House's misconduct and noted that the show-cause order outlined House's conduct "in detail and so, [he did] not repeat that summary" in his report.[30] Judge Albregts concluded that House "has failed to comply with discovery orders and other court orders and has obstructed [TH Foods's] ability to defend this case" and that "sanctions are warranted under the court's inherent authority and under [Rule] 37(b)(2)(A)."[31] He assessed the factors that courts must weigh when considering dismissal as a sanction and concluded that (1) the public's interest in expeditious resolution of litigation has been thwarted by House's refusal to comply with court orders or discovery obligations; (2) the court has spent "a disproportionate amount of its scarce resources on this one case due to [House's] consistent failures to follow court orders, filing of frivolous papers, failure to engage in discovery, repeated arguments, and improper citations to caselaw"; (3) TH Foods is "prejudiced by the fact that it cannot defend against this case" because of House's discovery misconduct; (4) the interest in adjudicating cases on their merits weighs in House's favor but does not outweigh the other

[27] *Id.* at 18:3–19:7.

[28] *Id.*

[29] ECF No. 324.

[30] *Id.* at 2.

[31] *Id.* at 3.

factors; and (5) there are no less drastic sanctions that the court can impose "if [House] will not follow court orders."[32] Judge Albregts thus concluded that dismissal without prejudice, rather than monetary or evidentiary sanctions, is the fitting remedy.[33] House objects comprehensively; TH Foods objects only that the dismissal should be with prejudice.

**Discussion**

When a party objects to a magistrate judge's report and recommendation (R&R) on a dispositive issue, the district court must conduct a de novo review of the challenged findings and recommendations.[34] The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," "receive further evidence," or "recommit the matter to the magistrate judge with instructions."[35]

## A. House's objections are overruled and the magistrate judge's dismissal recommendation is adopted.

### *1. Standard for dismissal as a sanction*

"District courts have an inherent power to control their dockets. In the exercise of that power they may impose sanctions including, where appropriate, default or dismissal."[36] District courts may also issue sanctions, including dismissal, if a party fails to obey court orders under Rule 37(b).[37] The Ninth Circuit requires district courts to consider five factors before imposing

---

[32] *Id.*

[33] *Id.*

[34] Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); L.R. IB 3-2(b) (requiring a district judge to review de novo only the portions of a report and recommendation addressing a case-dispositive issue that a party objects to).

[35] 28 U.S.C. § 636(b)(1).

[36] *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).

[37] Fed. R. Civ. P. 37(b).

the harsh sanction of dismissal: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."[38]

Because the first two factors usually favor dismissal, while the fourth cuts against such a sanction, "the key factors are prejudice and availability of lesser sanctions,"[39] and "[f]or dismissal to be proper, the conduct to be sanctioned must be due to willfulness, fault, or bad faith."[40] Finally, "[d]ue-process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'"[41]

In House's first objection, he contends that the magistrate judge erred by treating the two sources of dismissal authority—the court's inherent powers and Rule 37(b)—"as interchangeable without determining whether the record satisfies the requirements applicable to each."[42] But the Ninth Circuit has specifically noted that "dismissal sanctions under Rule 37 and a court's inherent powers are similar" and that it is appropriate to "use cases involving dismiss under Rule 37 and inherent powers interchangeably."[43] Plus, as explained infra, I find that dismissal is an appropriate sanction here under the court's inherent authority alone. So I overrule House's objection that the magistrate judge didn't appropriately apply the law.

---

[38] *Id.*

[39] *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

[40] *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

[41] *Id.* (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)) (cleaned up).

[42] ECF No. 325 at 3.

[43] *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990).

***2. House's generalized objections seeking a de novo review of the entire record do not constitute specific objections that this court must address.***

Several of House's 17 enumerated objections seek a de novo review of the entire record without explaining which portions of the magistrate judge's R&R he disputes. For example, objection two states that the R&R's "aggregate finding of obstruction requires particularized de novo review," contending that Judge Albregts "identifies eight categories of conduct but incorporates a more detailed discussion" from his show-cause order "rather than repeating that analysis."[44] He asks that I redetermine the facts for each "material alleged violation" and argues that he eventually complied with discovery orders in this case, but he fails to specify which obligations he complied with and how he did so.[45] In objection three, House "requests a record-specific determination of what conduct occurred, whether it violated an operative order, whether it was within [his] control, what [his] explanation establishes, and whether the conduct demonstrates" bad faith, willfulness, or fault.[46] Objections seven,[47] eight,[48] nine,[49]

---

[44] ECF No. 325 at 5.

[45] *Id.*

[46] *Id.* at 6.

[47] Regarding Judge Albregts's finding that House failed to produce his deposition notes despite being ordered to do so, House seeks that I determine "what notes [TH Foods] requested, what order governed their production, what [he] produced or withheld, whether subsequent production occurred, what testimony [TH Foods] obtained during [his] deposition, what material information remained unavailable specifically because of the notes, and what prejudice resulted." *Id.* at 9.

[48] Objection eight states that "each alleged violation of" Judge Albregts's November 17, 2025, order "should be examined against the particular directive" and provides a list of findings that House believes I should make. *Id.* at 9–10.

[49] Objection nine states that "medical discovery requires particularized findings concerning what [TH Foods] obtained, what remained outstanding, causation, and prejudice." *Id.* at 10. House again asks that I make findings concerning what medical records were produced, what remained outstanding, and how his conduct caused their nonproduction. *Id.* at 10–11. He also states that

ten,[50] eleven,[51] twelve,[52] thirteen,[53] and fourteen[54] all similarly request a generalized review and de novo findings without specifying how Judge Albregts erred.

These objections are not proper. Rule 72 requires objections to take the form of "specific written objections" and states that the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."[55] 28 U.S.C. § 636(b)(1) requires the district court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Those rules require de novo consideration of specific objections only—generalized or conclusory objections do not suffice.[56]

House's insistence that I dig through the record and reassess every finding that Judge Albregts explained at length in his show-cause order and reincorporated into his recommendation

---

specific causation and prejudice must be determined, but he does not provide argument explaining why he believes it wasn't.

[50] Objection ten states that "third-party discovery requires identification of the actual obstructed discovery." *Id.* at 12.

[51] Objection eleven states that "interrogatories and requests for production require a request-by-request review," ignoring the fact that House refused to respond to requests that Judge Albregts specifically ordered him to answer. *Id.* at 12–13.

[52] Objection twelve takes issue with Judge Albregts's finding that House's objections to discovery requests were unreasonable and "requests examination of the chronology of the extension request, his responses, the reasons asserted, the discovery remaining, and the status of Rule 35." *Id.* at 13.

[53] Objection thirteen asks that House's rogue filings "be examined according to their actual procedural status." *Id.* at 13–14.

[54] Objection fourteen asks the court to determine what evidence TH Foods was able to obtain, what evidence it wasn't, and how that missing evidence impaired TH Foods's ability to defend against House's claims. *Id.* at 14.

[55] Fed. R. Civ. P. 72(b)(2)–(3).

[56] *See Ali v. Grounds*, 236 F. Supp. 3d 1241, 1249 (S.D. Cal. 2017) (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d. Cir. 1984) (finding that de novo review is not required if objections are "general in nature" and if "there was no objection to a specific portion of the report")).

is not how this process works. House has the burden to point to specific parts of the record that support his view of the discovery disputes in this case and explain how he complied with the orders that Judge Albregts found he disobeyed. He fails to do so in each of the objections enumerated above, so I cannot conclude that de novo review is required to resolve them.

Nevertheless, I have reviewed the record and Judge Albregts's detailed account of House's discovery conduct in this case.[57] His findings accurately reflect House's pattern of discovery abuses: House would first vigorously object to discovery and refuse reasonable offers to meet and confer; TH Foods would file a motion to compel; Judge Albregts would grant it; and House would refuse to comply, reraising objections and avoiding his discovery obligations. The fact that his noncompliance took the form of even more discovery objections—most of which were already addressed by Judge Albregts when he granted the initial motion to compel—does not suggest, as House seems to imply, that House was going to comply with discovery if only his objections were considered. It rather suggests that House habitually delayed and obstructed reasonable discovery into his mental health, despite Judge Albregts repeatedly explaining that TH Foods had the right to that information.

Discovery is not an endless process—litigants must accept the court's rulings or follow the proscribed path to appeal them. House rarely did so. And in the one instance for which House did appeal Judge Albregts's discovery decision to me, I upheld the determination that he

---

[57] To the extent that House objects to Judge Albregts's decision to incorporate by reference his detailed account of House's dilatory discovery conduct, that objection is overruled. Judge Albregts's show-cause order provides record support for each of the eight categories of obstruction that he references in the R&R. *See* ECF No. 322. His decision not to regurgitate those findings in a new order is not error, and I consider those findings along with his analysis in the R&R. I also note that House failed to directly address any of those findings in his response to TH Foods's motion for sanctions or at the show-cause hearing.

had to sit for a Rule 35 examination.[58] But still House persisted and engaged in obstructive tactics to prevent that examination from moving forward. So to the extent that House requests de novo review of the record, I have done so, and I find that Judge Albregts's findings regarding House's litigation misconduct were thorough and correct.

#### 3. *House's objection to Judge Albregts's finding that he did not successfully address or defend his conduct at the show-cause hearing is overruled.*

In objection four, House takes issue with Judge Albregts's conclusion that he failed to successfully explain or rebut any of the misconduct identified in the show-cause order.[59] He contends that his statements at the show-cause hearing "clarified [his] position concerning intent, Rule 35, future compliance, medical discovery, deposition issues, and the remaining discovery [TH Foods] maintained it still required."[60] House says that he informed Judge Albregts that he was willing to sit for a Rule 35 exam and comply with court orders, that he believed he was "preserving objections and responding to active litigation matters rather than intentionally attempting to prevent" TH Foods from defending the action, and denied intentionally misleading the court or obstructing discovery.[61] He also notes that TH Foods represented that it could complete the outstanding discovery if it were given six more months.[62] He contends that these issues "were material to the questions that the R&R later resolved against [House]—culpability, prejudice, prospective compliance, and the availability of less drastic alternatives."[63]

---

[58] *See* ECF No. 297.

[59] ECF No. 325 at 6 (citing ECF No. 324 at 2).

[60] *Id.* at 6–7.

[61] *Id.* at 7.

[62] *Id.*

[63] *Id.*

On de novo review, I find that House's representations at the show-cause hearing did not alter any of the findings in Judge Albregts's initial show-cause order. Considering House's hearing commentary against the weight of his actions throughout this case, it was reasonable for the magistrate judge to conclude that his obstructionist tactics would not change merely because he recently said they would. As already explained ad nauseum (in this order, in Judge Albregts's orders, and in the multitude of hearings that Judge Albregts has held regarding House's discovery conduct), House has consistently disregarded court orders and the procedural rules of this court. He has done so despite being directly admonished not to. There was no reason for Judge Albregts to believe that House would finally change his behavior. I see no reason in the record to believe that either. So House's objection concerning Judge Albregts's consideration of his hearing testimony is overruled.

***4. House's objection regarding his repeated citation errors is overruled.***

House objects to Judge Albregts including his repeated citation errors as a basis for sanctions.[64] House clarifies that he "does not defend an objectively inaccurate quotation as accurate and does not ask [me] to disregard prior warnings."[65] He instead objects "to treating citation error alone as conclusive proof of knowing fabrication or intentional deception without determining the circumstances of the particular post-warning errors relied on."[66] He asks the court to determine precisely which errors he made, which ones he repeated after warnings, and "what the record establishes concerning culpability."[67]

---

[64] *Id.* at 8.

[65] *Id.*

[66] *Id.*

[67] *Id.*

The magistrate judge's show-cause order established that House was warned in November 2025 that he was citing to nonexistent or inaccurate cases and that, if he continued to do so, the court would impose sanctions.[68] In December, I agreed with the magistrate judge, noting that several of House's citations either did not exist "or cite[d] to a case that [came] from a different court than House contend[ed] and do[] not stand for any of the propositions that House claim[ed]."[69] I also advised him that "he must verify that the authority he relies on in his briefs is real and stands for the proposition that he attributes to it," and a "continued failure to do so w[ould] result in sanctions."[70] Despite those warnings, House proceeded to cite to inaccurate cases in at least three more briefs.[71]

The fact that House was warned twice to check his work, yet he continued to file documents with inaccurate citations, is sufficient to infer that House was willfully violating court orders. I need not go through every fabricated quotation or citation to make that finding. Nor do the magistrate judge's orders conclude that House's "citation errors alone [are] conclusive proof of knowing fabrication or intentional deception."[72] His citation errors, which continued after repeated warnings and threats of sanctions, demonstrate that House will not comply with court orders and does not respect his obligation to present true and accurate information to the court. Plus, House's citation errors are one of eight reasons that the magistrate judge recommends dismissing this case—even if I were to disregard House's repeated citation errors, I would still conclude that dismissal is warranted based on House's discovery conduct.

---

[68] ECF No. 322 at 11 (citing ECF No. 296 (transcript of November 17, 2025, hearing)).

[69] ECF No. 297 at 6.

[70] *Id.* at 7.

[71] *See* ECF No. 322 at 12.

[72] ECF No. 325 at 8.

### *5. Judge Albregts's determination that House obstructed his Rule 35 examination is supported by the record.*

House objects to "any characterization of the complete Rule 35 history as an unconditional refusal to undergo examination."[73] He instead insists that he "agreed to an examination while disputing its scope and parameters."[74] House contends that this distinction "bears upon culpability and, independently, upon whether any Rule 35 prejudice remained remediable through an order establishing the examination's terms."[75]

Regardless of whether the court casts it as refusal or a dispute about scope, the history of House's conduct when it comes to the Rule 35 examination can only be described as unreasonably obstructive. House refused to meet and confer about TH Foods's initial request, then refused to participate in any discussions about the scope and timing of the examination while his objection to the magistrate judge's order compelling the examination was pending. Even after I overruled House's objections, he refused to meet and confer in good faith, sought unreasonable limitations to the scope of the examination,[76] and objected to TH Foods's proposed dates without explaining why he was unavailable.[77] He instead proposed a date for the

---

[73] *Id.*

[74] *Id.*

[75] *Id.* at 9.

[76] House refused to sit for an examination unless the scope was limited to questions about his mental health in February 2024—the month during which the facts in his complaint occurred. *See* ECF No. 301-1 at ¶ 18. The parties previously disputed how far back TH Foods could seek medical records related to House's mental health, and the magistrate judge rejected House's proposed limitation to the year prior to his separation from TH Foods, explaining that the defense was entitled to much more than that and allowing its request for records to reach back into 2002. ECF No. 184 at 11:22–17:8.

[77] *See* ECF No. 327 at 6 (citing the record).

examination that would fall two days before the expert-report deadline, and he refused to stipulate to extend the discovery period to make up for his delays.[78]

The record shows that House's repeated disputes about the scope of the Rule 35 examination amount to much more than reasonable quibbles that the parties can normally resolve. House instead demanded impossible conditions that prevented the examination from ever taking place. His conduct over the examination is just one of the many ways throughout this case that House attempted to thwart any discovery concerning his mental state—which the magistrate judge repeatedly explained was within the scope of discovery in his case seeking millions of dollars in emotional damages.[79] So I conclude on de novo review that House's effective refusal to sit for a reasonable Rule 35 examination is evidence of willful misconduct that supports sanctions.

***6. On de novo review, House's conduct supports dismissal as a sanction.***

House's sixteenth objection is that "the five-factor balancing [test] does not support dismissal on this record."[80] House again does not explain what evidence or information he believes the magistrate judge ignored or got wrong—he instead insists that the district court needs to identify the discovery that was completed versus the discovery that wasn't, how that missing discovery "impaired the defense, and whether the impairment was permanent or curable through additional discovery."[81]

[78] *Id.* at 6–7 (citing the record).

[79] *See* ECF Nos. 103, 184, 296, 298 (hearings and orders at which the magistrate judge explained to House that his mental health was at issue and discoverable).

[80] ECF No. 325 at 15–16.

[81] *Id.* at 16.

The facts discussed at length in this order, plus the magistrate judge's findings in his show-cause order and recommendation, provide overwhelming evidence of House's misconduct. House's request that I go through every bit of discovery in this case to determine the relative prejudice to TH Foods is not necessary to conclude that House has generally obstructed TH Foods's valid attempts to obtain discovery relevant to House's mental health. That TH Foods may have received some of that discovery is not the point. As has been explained to him several times, House does not have the authority to determine how much discovery TH Foods gets regarding a specific topic. The court alone has that authority, and it has repeatedly explained that discovery is broad and House's decision to put his mental health at issue in this case means that TH Foods had latitude to seek relevant information related to his past and present mental health to determine the truth behind his claim that TH Foods caused his trauma. That includes diving into his medical history and imposing a Rule 35 examination. TH Foods has been unable to gather much of that discovery because House has repeatedly insisted on acting as the gatekeeper for what TH Foods can discover. That is not how this process works, and it is clear from the record that House has prevented TH Foods from obtaining discovery relevant to the defense of this case. So his insistence that this court must list all of the discovery he thwarted against the discovery he allowed is not well taken.

*a. On balance, the first four factors favor dismissal.*

On de novo review, I conclude that the magistrate judge correctly concluded that dismissal is the appropriate sanction here. It is clear that the public's interest in expeditious resolution of litigation has been undermined by House's refusal to comply with court orders and his discovery obligations. The court has expended an incredible amount of resources on this one case, much of which has been used exclusively to deal with House's noncompliance. TH Foods

has been prejudiced by House's noncompliance because it still has not obtained discovery that the court ordered House to produce and House's tactics have required TH Foods to expend money and time fighting for every bit of discovery that it is entitled to. Though public policy favors disposition on the merits and that factor would normally weigh in House's favor, even that factor weighs against House because his discovery abuses prevent a true resolution on the merits.

*b. No lesser sanctions would cure the prejudice from House's misconduct.*

House specifically objects to the magistrate judge's finding that sanctions less drastic than dismissal would not cure his misconduct in this case.[82] He contends that his representations at the show-cause hearing "concerning future compliance and [TH Foods's] representation concerning six additional months of discovery should be considered" and proposes several alternatives to dismissal: "a final compliance order with fixed deadlines; completion of Rule 35 under Court-defined conditions; renewed medical authorizations; targeted provider discovery; supplemental deposition testimony; evidentiary limitations tied to particular discovery violations; issue sanctions; attorneys' fees or monetary sanctions attributable to specific misconduct; or another remedy tailored to actual prejudice."[83]

I conclude that the magistrate judge properly weighed the record of House's continued noncompliance against his promise at the show-cause hearing to start complying and concluded that his late-in-the-game representations were just not believable. The record shows that, time and time again, House refused to comply with court orders even after representing to the magistrate judge that he would finally comply. House offers no reason why the court should trust that this time is different. Nor would his many alternative sanctions cure the prejudice

[82] ECF No. 325 at 14–15.

[83] *Id.*

suffered by TH Foods in this case. House essentially asks for the opportunity to redo all of the discovery that he objected strenuously to throughout the discovery period and promises that he will act differently this time.[84] The discovery period in this case stretched on for more than a year because of House's bad-faith tactics.[85] Adding another six months of discovery and requiring the court to babysit the discovery process that should have wrapped up several months ago is not an appropriate sanction for House's conduct because there is no guarantee that House will actually comply this time, and the record suggests that he won't. So I overrule his objection to the magistrate judge's finding that less drastic sanctions will not suffice and conclude that the sanction factors weigh in favor of dismissal. So I overrule House's objections, adopt the magistrate judge's recommendation, and dismiss this case.[86]

**B. TH Foods's objection is sustained.**

TH Foods objects to the magistrate judge's recommendation that this case be dismissed without prejudice, contending that the severity of House's misconduct warrants a with-prejudice

---

[84] Even in his alternative-sanction suggestions, House attempts to relitigate an issue repeatedly decided against him. By seeking "completion of Rule 35 under Court-imposed conditions," he subtlety re-raises his argument, rejected by the magistrate judge and me, that the court must impose conditions on the Rule 35 examination rather than allow the parties to meet, confer, and agree to their own conditions. *See* ECF No. 297 at 3–4.

[85] *See* ECF No. 28 (establishing April 22, 2025, as the initial discovery-cutoff date, with initial disclosures due December 20, 2024); ECF No. 287 (granting the last of many discovery-extension requests and establishing January 16, 2026, as the new discovery-cutoff date).

[86] House's seventeenth objection asks me to consider TH Foods's "materially comparable procedural conduct under the same objective standards." ECF No. 325 at 17. But the court is focusing on House's conduct because that is the issue of the pending dispute in this case. House did not move for sanctions against TH Foods or reasonably suggest that he is merely responding to improper tactics by the defense. Plus, the "misconduct" that House attributes to TH Foods—one failure to include a meet-and-confer declaration in a motion a compel that was later cured and one late reply—pales in comparison to House's repeated disregard of court orders. So I do not find that TH Foods's conduct has any bearing on this dispute.

dismissal.[87] It argues that only a with-prejudice dismissal operates as a final judgment on the merits that would prevent House from refiling the same claims in a new action and repeating "the exact same litigation abuses that the dismissal sanction was meant to end."[88] It also notes that dismissal under Rule 41(b) for failure to comply with a court order automatically operates as an adjudication on the merits unless the dismissal order states otherwise and argues that the same presumption should apply here.[89]

I conclude that dismissal with prejudice is the appropriate sanction here. House has demonstrated his unwillingness to comply with this court's orders, and the prejudice to TH Foods that could result from allowing House to refile this action and engage in the same misconduct would render dismissal as a sanction meaningless. And I find that the five-factor sanctions analysis supports this conclusion. So I sustain TH Foods's objection and modify the magistrate judge's recommendation to require dismissal with prejudice.

## Conclusion

IT IS THEREFORE ORDERED that plaintiff Preston House's objection to the magistrate judge's recommendation **[ECF No. 325] is OVERRULED** and defendant TH Foods's objection to the magistrate judge's recommendation **[ECF No. 326] is SUSTAINED**. The magistrate judge's recommendation **[ECF No. 324] is ADOPTED in part.** This case is **DISMISSED WITH PREJUDICE** as a sanction for House's litigation misconduct. **The Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE**.

U.S. District Judge Jennifer A. Dorsey
November 25, 2026

[87] ECF No. 326.

[88] *Id.* at 8.

[89] *Id.* at 9 (citing Fed. R. Civ. P. 41(b)).